Charles J. Tornabene, Esq.
cj@tornabenemckenna.com
TORNABENE & MCKENNA, PLLC
815 E. Front Street, Suite 4A
P.O. Box 7009
Missoula, MT 59807-7009
(406) 327-0800

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| JEANNE KIBBEE, | Cause No.:D-MTX-9-CV-07-000062-001 |
|---|---|
| Plaintiff, | |
| vs. | **COMPLAINT & JURY REQUEST** |
| ACP SALES WEST, LLC, AND PAWS UP RANCH, LLC D/B/A THE RESORT AT PAWS UP, | |
| Defendants. | |

¶1   Jeanne Kibbee is a resident of Missoula County, Montana.

¶2   ACP Sales West, LLC is a Nevada entity.

¶3   ACP Sales West, LLC has its principal place of business in Nevada.

¶4   ACP Sales West, LLC operates in Montana.

¶5   ACP Sales West, LLC is registered with the Montana Secretary of State.

¶6   ACP Sales West, LLC has one or more employees and is doing business in Montana.

¶7   Paws Up Ranch, LLC is a Nevada entity.

¶8   Paws Up Ranch, LLC has its principle place of business in Nevada.

¶9   Paws Up Ranch, LLC operates in Montana.

¶10  Paws Up Ranch, LLC is registered with the Montana Secretary of State.

¶11  Paws Up Ranch, LLC has one or more employees and is doing business in Montana.

¶12     ACP Sales West, LLC and Paws Up Ranch, LLC, doing business as The Resort at Paws Up, operate a guest ranch in Greenough, Missoula County, Montana, commonly known as The Resort at Paws Up.

¶13     The Resort at Paws Up maintains a website where it advertises its services and states that The Resort at Paws Up is the "Last Best Place."  The website summarizes its services as follows:

> At the crossroads of incomparable luxury and unspoiled wilderness lies The Resort at Paws Up. Distinguishing itself from the rest of the Montana resorts and standing apart from all other Rocky Mountain resorts, the Resort at Paws Up offers an enchanting escape into the tranquility and magnificence of Montana's pastoral countryside. This luxurious ranch resort in Montana is discretely nestled among some of the most breathtaking country in the world. Here, you'll live day to day, adventure to adventure. Spend an hour, a day or a week on horseback-all in a wilderness sanctuary you'll never forget. Cast a fly in sparkling waters to eager cutthroats, explore the land Lewis and Clark swooned over, or indulge in sumptuous in-room spa treatments. You'll sleep on the finest sheets in The Last Best Bed® amidst a landscape of impeccable rustic elegance. It is home to first-class adventure on a grand scale; an experience that other Montana resorts cannot match.

¶14     Ms. Kibbee is a resident of Missoula, Missoula County, Montana.  ACP Sales West, LLC and Paws Up Ranch, LLC are entities formed in a state other than Montana.  ACP Sales West, LLC and Paws Up Ranch, LLC maintain their principle places of business in a state other than Montana.  The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

¶15     Ms. Kibbee began working for ACP Sales West, LLC and the Paws Up Ranch, LLC (collectively hereafter "The Resort at Paws Up") on April 4, 2005 as the personnel manager.

¶16     Ms. Kibbee engaged in the performance of work for The Resort at Paws Up for which she was paid a salary and bonuses.

¶17     Ms. Kibbee completed The Resort at Paws Up's 90 day probationary period.

¶18     Ms. Kibbee was not an independent contractor for The Resort at Paws Up.

¶19     The Resort at Paws Up provided Ms. Kibbee with fringe benefits.

¶20     The Resort at Paws Up provided Ms. Kibbee with vacation leave.

¶21     The Resort at Paws Up provided Ms. Kibbee with sick leave.

¶22     The Resort at Paws Up provided Ms. Kibbee with a medical insurance plan.

¶23     The Resort at Paws Up provided Ms. Kibbee with a life insurance plan.

¶24     The Resort at Paws Up provided Ms. Kibbee with a pension benefit plan.

¶25     John Erickson was the General Manager of The Resort at Paws Up.

¶26     John Erickson was an employee or agent of The Resort at Paws Up.

¶27     In May 2006, Ms. Kibbee considered ending her employment at The Resort at Paws Up to seek promising employment opportunities elsewhere.

¶28     In May 2006, The Resort at Paws Up offered Ms. Kibbee a raise to retain her.

¶29     In May 2006, Ms. Kibbee accepted the raise and continued her employment with The Resort at Paws Up.

¶30     In May 2006, David Lipson told Bryan Kindred that The Resort at Paws Up would discharge Ms. Kibbee when it was convenient.

¶31     On December 30, 2006, John Erickson asked Ms. Kibbee to resign from her employment at The Resort at Paws Up.

¶32     On January 4, 2007, Ms. Kibbee told John Erickson that she would not resign her employment at The Resort at Paws Up.

¶33     On January 4, 2007, John Erickson told Ms. Kibbee that if she did not resign her employment at The Resort at Paws Up, The Resort at Paws Up would discharge her from employment.

¶34     On January 4, 2007, John Erickson directed Ms. Kibbee to prepare her letter of resignation.

¶35     On January 4, 2007, John Erickson told Ms. Kibbee that The Resort at Paws Up had begun recruiting Ms. Kibbee's replacement.

¶36     On January 4, 2007, John Erickson told Ms. Kibbee that if she resigned her employment on good terms, The Resort at Paws Up would provide her with a positive letter of recommendation.

¶37     On January 6, 2007, John Erickson asked Ms. Kibbee to resign her employment in writing with The Resort at Paws Up.

¶38     On January 6, 2007, Ms. Kibbee told John Erickson that she would not resign her employment with The Resort at Paws Up.

¶39     On January 6, 2007, John Erickson told Ms. Kibbee that if she did not resign her employment with The Resort at Paws Up, The Resort at Paws Up would discharge her.

¶40     On January 13, 2007, John Erickson told Ms. Kibbee that The Resort at Paws Up was recruiting her replacement.

¶41     On January 13, 2007, John Erickson told Ms. Kibbee that if she did not resign her employment with The Resort at Paws Up, The Resort at Paws Up would discharge her.

        John Erickson told Ms. Kibbee that he had a list of reasons for her discharge.

¶42     On January 20, 2007, John Erickson told Ms. Kibbee that The Resort at Paws Up was interviewing a candidate for her replacement.

¶43     On January 20, 2007, John Erickson told Ms. Kibbee that the interview of the candidate for her replacement was scheduled for the following Sunday.

¶44     On January 20, 2007, John Erickson told Ms. Kibbee that if she did not resign her employment with The Resort at Paws Up, The Resort at Paws Up would not provide her with a positive employment recommendation.

¶45     On January 24, 2007, John Erickson told Ms. Kibbee that The Resort at Paws Up had hired her replacement.

¶46     On January 24, 2007, John Erickson told Ms. Kibbee that her replacement would begin working at The Resort at Paws Up on February 9, 2007.

¶47     On January 24, 2007, John Erickson told Ms. Kibbee that The Resort at Paws Up would pay her for her vacation benefit with her last pay check.

¶48     On January 24, 2007, Ms. Kibbee gave John Erickson a writing in which Ms. Kibbee asked him to provide her with The Resort at Paws Up's reasons for discharging her.

¶49     On February 2, 2007, John Erickson told Ms. Kibbee that he had arranged jobs for her in Colorado and Washington.

¶50     On February 2, 2007, John Erickson asked Ms. Kibbee to resign her employment in writing at The Resort at Paws Up.

¶51     John Erickson told Ms. Kibbee that he had a list of reasons for her discharge.

¶52     On February 2, 2007, Ms. Kibbee refused to provide The Resort at Paws Up with a written resignation.

¶53     On February 2, 2007, The Resort at Paws Up discharged Ms. Kibbee from her employment.

¶54     On February 2, 2007, The Resort at Paws Up escorted Ms. Kibbee off The Resort at Paws Up's premises.

¶55     On February 7, 2007, Ms. Kibbee wrote The Resort at Paws Up and demanded that The Resort at Paws Up explain its reasons in writing for discharging her from her employment.

¶56     Since her discharge, Ms. Kibbee has completed The Resort at Paws Up's grievance procedures.

¶57     The Resort at Paws up had not given Ms. Kibbee a reason for her discharge.

## Wrongful Discharge

¶58     Ms. Kibbee realleges the allegations contained in ¶1 to ¶57.

¶59     The Resort at Paws Up wrongfully discharged Ms. Kibbee from her employment at The Resort at Paws Up in violation of Montana's Wrongful Discharge Act.

¶60     The Resort at Paws Up did not have good cause to discharge Ms. Kibbee.

¶61     The Resort at Paws Up did not have reasonable job-related grounds for Ms. Kibbee's dismissal.

¶62     Ms. Kibbee did not fail to satisfactorily perform her job duties.

¶63     Ms. Kibbee did not disrupt The Resort at Paws Up operation.

¶64     The Resort at Paws Up had no other legitimate business reason to discharge Ms. Kibbee.

¶65     Ms. Kibbee did not resign her position but, even if she had, The Resort at Paws Up created an environment that an objective, reasonable person would find so intolerable that Ms. Kibbee's purported voluntary termination of employment was the only reasonable alternative.

## Punitive Damages

¶66     Ms. Kibbee realleges the allegations contained in ¶1 to ¶65.

¶67     When The Resort at Paws Up discharged Ms. Kibbee, it committed actual fraud and actual malice.

¶68     The Resort at Paws Up had knowledge in May 2006 that it planned to discharge Ms. Kibbee from her employment at The Resort at Paws Up at the close of its busy season, yet The Resort at Paws Up deliberately enticed her to stay and precluded her from promising employment opportunities elsewhere.  The Resort at Paws Up deliberately proceeded to act with indifference to the high probability of injury to Ms. Kibbee.

¶69     John Erickson represented to Ms. Kibbee that he had arranged jobs for her in Colorado and Washington.  John Erickson knew this representation was false.

¶70     John Erickson concealed the fact that he had not arranged for jobs for Ms. Kibbee in Colorado and Washington for the purpose of inducing Mr. Kibbee to resign her position at Paws Up and to relinquish her right to redress under Montana law, or otherwise to cause her injury.  Ms. Kibbee had a right to rely on John Erickson's representations concerning her employment because employment is a protected property right.

¶71     John Erickson represented to Ms. Kibbee that he had a list of reasons that would establish good cause for her discharge.  John Erickson knew this representation was false.

¶72     John Erickson concealed the fact that he did not have a list of reasons that would establish good cause for Ms. Kibbee's discharge for the purpose of inducing Ms. Kibbee to resign her position at Paws Up and to relinquish her right to redress under Montana law, or other wise to cause her injury.  Ms. Kibbee had a right to rely on John Erickson's representations concerning her employment because employment is a protected property right.

### Jury Request

¶73     Ms. Kibbee respectfully requests a jury.

¶74     Wherefore, Ms. Kibbee prays for:

    a.     lost wages and fringe benefits for a period not to exceed 4 years from the date of discharge, together with interest on the lost wages and fringe benefits.

    b.     punitive damages.

    c.     and any other relief this Court deems appropriate.

DATED THIS 22nd of May 2007.

                                       /s/ Charles J. Tornabene  
                                     Charles J. Tornabene Attorney  
                                     Tornabene & McKenna, PLLC  
                                     Attorney for Plaintiff