IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

_____

JEANNE KIBBEE,

                              CAUSE NO. CV 07-62-M-DWM-JCL
              Plaintiff,

     vs.

                              FINDINGS AND RECOMMENDATION
                              OF UNITED STATES
                              MAGISTRATE JUDGE
ACP SALES WEST, LLC, and
PAWS UP RANCH, LLC d/b/a
THE RESORT AT PAWS UP,        AND ORDER

              Defendants.

_____

     This wrongful discharge case comes before the Court on the
Defendants' motion for summary judgment and Plaintiff's motion to
compel discovery.  Having reviewed the briefs and other materials
of record, the Court enters the following:

                          RECOMMENDATION

     **IT IS RECOMMENDED** that the Defendants' Motion for Summary
Judgment be **GRANTED.**

     NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a
copy of the Findings and Recommendation of the United States
Magistrate upon the parties.  The parties are advised that
pursuant to 28 U.S.C. § 636, any objections to these findings
must be filed with the Clerk of Court and copies served on

PAGE 1

opposing counsel within ten (10) days after receipt hereof, or objection is waived.

## ORDER

**IT IS ORDERED** that Plaintiff's motion to compel is **DENIED AS MOOT**, subject to renewal in the event that the Honorable Donald W. Molloy does not grant Defendants' motion for summary judgment as recommended.


DATED this 30th day of May, 2008


 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

## ANALYSIS

### I.   Summary Judgment Standards

The party moving for summary judgment bears the burden of demonstrating "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, deposi-tions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A movant may

satisfy that burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, at 248.  The nonmoving party must "go beyond the pleadings and, by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324.

## II.  Background

For purposes of setting forth the relevant factual background, this Court is to take the material facts from the record and, where disputed, view them in the light most favorable to the Plaintiff, as the non-moving party.  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  This is a rather difficult task in this case, however, because the Plaintiff Jeanne Kibbee ("Kibbee") has chosen not to file a Statement of Genuine Issues, as required by Local Rule 56.1(b), or otherwise submit any affidavits, depositions, or discovery materials in opposition to the Defendants' motion. Although Kibbee cites to deposition testimony in her response

brief, she has not made those depositions (or excerpts therefrom) part of the record.

Pointing to these deficiencies, Defendants ask the Court to take as true all of the facts identified in its statement of uncontroverted facts.  While Defendants properly fault Kibbee for failing to abide by the Local Rules, it is worth noting that Defendants have not complied with Fed. R. Civ. P. 56(e), which requires that evidentiary materials or exhibits submitted in support of a motion for summary judgment be properly authenticated.  "It is well settled that unauthenticated documents cannot be considered on a motion for summary judgment." *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987).  Defendants have submitted a photocopied excerpt from Kibbee's deposition in support of their motion for summary judgment, along with a page from what the Court assumes is Paws Up's employee handbook. Defs.' State. Uncontroverted Facts Exs. A & B (Mar. 28, 2008).  Defendants have neglected, however, to provide the requisite authenticating affidavit or, with regard to the deposition excerpt, a certification by the court reporter. *See Orr v. Bank of America*, *NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) ("A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification

PAGE 4

that the deposition is a true record of the testimony of the deponent.").

Nevertheless, because Kibbee has not objected to the Defendants' use of these documents and does not dispute their authenticity, the Court will consider them for purposes of resolving the pending motion.  In addition, while the Court does not take lightly Kibbee's failure to file a Statement of Genuine Issues as required by the Local Rules, there is no need to deem Defendants' facts as admitted.  Even viewing the disputed facts in Kibbee's favor, and overlooking her failure to comply with the applicable rules, the Court is satisfied that the Defendants are entitled to judgment as a matter of law for the reasons set forth below.

Bearing in mind the various deficiencies identified above, the Court takes the following facts from the materials of record, meager as they are.  Defendants ACP Sales West, LLC and Paws Up Ranch, LLC (collectively "Paws Up") own and operate a luxury ranch resort in Montana, commonly known as The Resort at Paws Up. Joint Proposed Stipulation of Facts ¶ 12 (Dec. 12, 2007); Amended Compl., ¶ 12 (Oct. 1, 2007).  Plaintiff Jeanne Kibbee ("Kibbee") worked for Paws Up as the resort's Human Resource Manager from April 4, 2005, until February 2, 2007.  Joint Stip. ¶ 15; Depo. Jeanne Kibbee 146:17-18.

Kibbee completed Paws Up's ninety day probationary period, but did not have a written employment agreement with the resort.

PAGE 5

Joint Stip. ¶ 17; Depo. Kibbee 60:2-4.  In May of 2006, Kibbee considered leaving her position with Paws Up to pursue other employment opportunities.  Am. Compl. ¶ 27.  Paws Up offered her a raise, however, and Kibbee decided to stay.  Joint Stip. ¶ 25. On May 31, 2006, Paws Up owner Dave Lipson sent Kibbee an e-mail indicating Paws Up was "delighted" she had decided to continue with her employment.  Joint Stip. ¶ 25.

Kibbee's employment ended some eight months later, on February 2, 2007.  Depo. Kibbee, 141.  The parties dispute the circumstances leading up to and surrounding Kibbee's separation from employment.  Paws Up takes the position that Kibbee voluntarily terminated her employment, while Kibbee claims she was wrongfully discharged in violation of Montana law.  Paws Up does not elaborate on its view of events, however, because it considers disputed circumstances surrounding Kibbee's last day on the job immaterial to the legal basis for its summary judgment motion.

Kibbee, in contrast, dwells at length on the circumstances leading up to and surrounding the end of her employment.

PAGE 6

Acccording to Kibbee,[1] Lipson told Brian Kindred[2] in May 2006 that she would be discharged when it was convenient.  Beginning in late December 2006, Paws Up's general manager, John Erickson repeatedly asked Kibbee to resign from her employment and indicated that if she did not do so, she would be discharged.  On January 24, 2007, Erickson told Kibbee that Paws Up had hired her replacement, who was to begin working some two weeks later. Kibbee promptly asked in writing that Paws Up provide her with its reasons for discharging her.  On February 2, 2007, Erickson told Kibbee that he had arranged jobs for her in Colorado and Washington, advised her that he had a list of reasons for her discharge, and again asked her to resign from her employment. Kibbee refused to provide her written resignation, and Paws Up discharged her that day.

Regardless of which version of the events leading up to Kibbee's separation from employment is true, it is undisputed that Paws Up maintains a written internal grievance procedure by

---

[1] These facts are taken from Kibbee's brief in response to Paws Up's motion for summary judgment.  Kibbee has taken most of these facts from the allegations in her Amended Complaint, and others from depositions that are not part of the record.  As noted above, this is insufficient for purposes of summary judgment.  Even taking her allegations as true, however, Kibbee's claims fail for the reasons set forth herein.

[2] At that time, Brian Kindred was Paws Up's general manager and Kibbee's supervisor.  John Erickson later replaced Kindred as the resort's general manager and became Kibbee's supervisor.

which its employees may challenge an allegedly wrongful

discharge.  That grievance procedure provides as follows:

> The Resort at Paws Up Ranch has a grievance procedure for
> employees who have continued after their ninety (90) days
> Probationary Period who feel they have been wrongfully
> terminated.  This procedure must be followed completely.  An
> employee who feels they have been wrongfully terminated must
> file a "Request for Review" with the Human Resources
> Administrator WITHIN seven days of their termination.  If
> the grievance is with the Human Resources Administrator, the
> employee must submit their "Request for Review" to the
> President of the Company.  This "Request for Review" will be
> investigated and a final decision on the status of the
> employee's employment will be granted within two weeks of
> the date of receipt of the request.

Defs.' State. Undisputed Facts, Ex. B.

Kibbee submitted a timely request to participate in the

grievance procedure, and Paws Up held a grievance procedure

meeting on March 20, 2007.  Joint Stip. ¶¶ 26, 27.  After its

review of the facts and circumstances surrounding Kibbee's

separation from employment, Paws Up offered to reinstate her to

her position as the resort's human resource manager under a new

general manager who would replace Erickson.  Joint Stip. ¶ 27;

Depo. Kibbee 146:5-147:16; Pl.'s Resp. to Def.'s Mot. to Dismiss,

Ex. 1, p. 8.  Paws Up indicated it would pay Kibbee's salary and

benefits retroactive to her final day on the job, and asked that

she "sign and acknowledge [her] acceptance of this decision as a

PAGE 8

final resolution of [her] grievances with the Company."[3]  Pl.'s Resp. to Def.'s Mot. to Dismiss, Exh. 1, p. 8.

Kibbee rejected Paws Up's offer of reinstatement, and the parties' subsequent attempts to come to an agreement were unsuccessful.  Depo. Kibbee 148.  On May 22, 2007, Kibbee commenced this action against Paws Up, alleging state law claims for wrongful discharge, punitive damages, misrepresentation, and violation of the covenant of good faith and fair dealing.  Compl. (May 22, 2007); Am. Compl. (Oct. 1, 2007).

Paws Up has moved for summary judgment on the basis that its offer to reinstate Kibbee precludes her from recovering under Montana's Wrongful Discharge from Employment Act (WDEA), Mont. Code Ann. §§ 39-2-901 et seq.  Paws Up also maintains that Kibbee's remaining state law claims are preempted by the WDEA.

**III.  Discussion**

    **A.  Wrongful discharge claim**

Paws Up argues that Kibbee is precluded from recovering under Montana's WDEA because she refused what it characterizes as an unconditional offer of reinstatement.

The United States Supreme Court has held that an employer accused of Title VII discrimination may toll the accrual of back pay liability by offering the plaintiff unconditional

---

[3] Paws Up has not made this document part of the record on summary judgment, citing instead to Kibbee's deposition testimony. Defs.' State. Undisputed Facts ¶¶ 8-9.

reinstatement.  *Ford Motor Co. v. EEOC*, 458 U.S. 219, 241 (1982)
(stating that, "absent special circumstances, the rejection of an
employer's unconditional job offer ends the accrual of potential
backpay liability").  While *Ford Motor* involved an unlawful
discrimination claim under Title VII, many courts, including the
Ninth Circuit, have applied this rule to wrongful discharge cases
governed by state law.  *See e.g. Boehm v. American Broadcasting
Co.*, 929 F.2d 482, 485 (9th Cir. 1991) (applying *Ford Motor* rule
in wrongful termination case governed by California law); *Rasheed
v. Chrysler Corp.*, 517 N.W.2d 19, 27 (Mich. 1994).  Courts have
typically done so on the basis that the *Ford Motor* framework
comports with the generally recognized state law principle that
plaintiffs in wrongful discharge cases have a duty to mitigate
damages.  *Boehm*, 929 F.2d at 485.  Because the Court does not
find, and the parties have not cited, any decisional law from
Montana directly on point, the Court concludes the *Ford Motor*
rationale serves as an appropriate analytical framework.[4]

A plaintiff asserting a claim for wrongful discharge under
Montana's WDEA has a duty to mitigate his or her damages.  Mont.

_____

[4] Where a state has not addressed a particular issue of state
law, a federal court in a diversity action must use its best
judgment to predict how the highest court of the state would
resolve the issue. *Strother v. S. Cal. Permanente Medical Group*,
79 F.3d 859, 865 (9th Cir. 1996).  To accomplish this task, the
federal court should rely on persuasive authorities for guidance,
including decisions from other jurisdictions. *Strother*, 79 F.3d at
865.

PAGE 10

Code. Ann. § 39-2-905(1).  Under Montana law, damages in a
wrongful discharge action are limited by statute to lost wages
and fringe benefits for a period not to exceed four years from
the date of discharge, together with interest.  Mont. Code Ann. §
39-2-905(1).  In view of a plaintiff's generally recognized duty
to mitigate his or her damages, the WDEA requires that "[i]nterim
earnings, including amounts the employee could have earned with
reasonable diligence, be deducted from the amount awarded for
lost wages."  Mont. Code Ann. § 39-2-905(1).

　　　For an employer to avoid accrual of backpay liability under
the rule enunciated in *Ford Motor,* it is critical that the
employer's offer of reinstatement be unconditional.  *Ford Motor*,
458 U.S. at 232.  In addition, the offer must be for the
plaintiff to return to "the same job as, or one 'substantially
equivalent' to, the job from which the claim arose."  *Boehm*, 929
F.2d at 485 (*citing Ford Motor*, 458 U.S. at 241).  Paws Up argues
that these criteria are satisfied here because it unconditionally
offered to reinstate Kibbee to the very same position she
previously held.  As a consequence, Paws Up contends Kibbee
"simply has no compensable damages under the WDEA," and maintains
it is entitled to summary judgment on that basis.  Def.'s Br. in
Support 8 (March 28, 2008).

　　　Kibbee, of course, disagrees and maintains there is a
genuine issue of material fact as to whether Paws Up's

reinstatement offer was truly unconditional.  Specifically, she
argues that Paws Up conditioned its offer on her "accepting a
different job."  Pl.'s Response 13.  For support, Kibbee relies
on a short excerpt from the deposition of Paws Up owner Dave
Lipson.  Lipson apparently explained that it was the resort's
intent to "split the job" Kibbee formerly held and have her "do
what she did best and bring someone else in as a number two to do
the things that [Kibbee] did not do well...."  Pl.'s Response 13.

        To that end, the actual reinstatement offer advised Kibbee
that the company had "hired a HR consultant to assist the HR
department," and that person would "remain in place to assist
[Kibbee] in completing [her] duties as HR manager...."  At most,
the fact that Paws Up had hired someone to assist Kibbee with her
former duties indicates that it was offering to reinstate her to
a position with better terms than she had previously.  That her
job would have otherwise remained the same is clear from the
record.  The reinstatement offer itself specifically stated that
Kibbee's "employment with the Company as the HR manager [would]
continue at the same salary and benefits" that she had been
receiving."  Pl.'s Resp. to Def.'s Mot. to Dismiss, Ex. 1, p. 8.
Paws Up's authorized representative also wrote that upon Kibbee's
return to work, the company would pay her salary and benefits
retroactive the date she had stopped working.  Pl.'s Resp. to
Def.'s Mot. to Dismiss, Ex. 1, p. 8.


PAGE 12

It is clear from the foregoing that the job to which Kibbee would have returned had she accepted Paws Up's reinstatement offer was substantially equivalent in all respects to her prior position. Boehm, 929 F.2d at 485. Kibbee does not otherwise contest the unconditional nature of Paws Up's reinstatement offer. The undisputed evidence of record indeed establishes that Paws Up unconditionally offered to allow Kibbee to return to her prior job as the resort's human resources manager.

Kibbee rejected Paws Up's offer, however, and responded in writing through her attorney. Pl.'s Resp. to Def.'s Mot. to Dismiss, Ex. C. Kibbee requested a "$5,000 per year raise" and "an employment contract clearly requiring Paws Up to pay the sum of two years salary or $130,000 should she be fired or terminated for any reason in the next five years." Pl.'s Resp. to Def.'s Mot. to Dismiss, Ex. C. If Paws Up would agree to those terms, Kibbee indicated "she could then resume her position." Pl.'s Resp. to Def.'s Mot. to Dismiss, Ex. C. Paws Up did not agree to Kibbee's demands, however, and the parties were unable to come to an agreement resolving their dispute.

According to Paws Up, any liability it might have had for backpay damages ended automatically upon Kibbee's rejection of its unconditional offer to reinstate her to her former position, with the same salary and benefits retroactive to her last day on the job. Because lost wages are the only damages available under Montana's WDEA, Paws Up argues Kibbee "simply has no compensable

PAGE 13

damages" and claims it is entitled to judgment as a matter of law on Kibbee's wrongful discharge claim.  While Paws Up is correct that a plaintiff's rejection of an unconditional offer of reinstatement typically ends the accrual of an employer's potential back pay liability, Paws Up overlooks the fact that the *Ford Motor* recognized a limited exception for "special circumstances."  *Ford Motor,* 458 U.S. at 241 ("*absent special circumstances*, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability") (emphasis added).

Where, as here, the employer has carried its initial burden of establishing "that the plaintiff failed to accept an unconditional offer to a job substantially equivalent to the one denied," to recover backpay damages the "the plaintiff must establish 'special circumstances' justifying a rejection of the offer."  *Boehm*, 929 F.2d at 485 (*citing Ford Motor*, 458 U.S. at 231-32 & 241).  Whether such special circumstances exist is generally a question of whether the plaintiff acted reasonably in rejecting the offer of reinstatement.  *See*, *Smith v. World Ins. Co.*, 38 F.3d 1456, 1464 (8th Cir. 1994); *Bragalone v. Kona Coast Resort Joint Venture,* 866 F.Supp. 1285, 1296 (D. Hawaii 1994). In other words, "if a plaintiff reasonably rejects an offer of reinstatement, then the offer does not terminate the accrual of backpay damages." *Smith*, 38 F.3d at 1464.

PAGE 14

The question of whether Kibbee acted reasonably in rejecting Paws Up's reinstatement offer is an objective one, to be answered by considering whether a reasonable person would have refused the offer of reinstatement. *See*, *Bragalone*, 866 F.Supp. at 1296 (*citing Morris v. American Nat'l Can Corp.*, 952 F.2d 200, 203 (8th Cir. 1991)); *Smith*, 38 F.3d at 1464.   In many cases, whether a plaintiff acted reasonably in rejecting an unconditional offer of reinstatement is a question of fact. *See Ortiz v. Bank of America Nat'l Trust*, 852 F.2d 383, 386-87 (9th Cir. 1988).  But where a plaintiff fails to point to sufficient evidence from which a trier of fact could find that it was reasonable to reject an offer of reinstatement, the issue can be resolved as a matter of law. *See Bragalone*, 866 F.Supp. at 1296; *Morris*, 952 F.2d at 202-03 (*overruled in part on other grounds*, 988 F.2d 50 (1993)); *Robles v. Cox & Co.*, 154 F.Supp.2d 795, 807-08 (S.D.N.Y, 2001).

Kibbee effectively takes the position that her decision to reject Paws Up's reinstatement offer was reasonable under the circumstances.  Although her argument on this point is cursory, at best, she points to that portion of her deposition testimony in which she presumably testified[5] that she refused  Paws Up's offer because she "had gone through a month of hell" before her

---

[5] Again, Kibbee simply includes an excerpted portion of her deposition, without making it part of the record.

alleged discharge, during which time she "just kept coming back to work and wondering which day I was going to be fired."  Pl.'s Response, 14.

That Kibbee spent her last weeks on the job wondering when Paws Up might choose to terminate her employment is not sufficient to raise a genuine issue of material fact as to whether a reasonable person would have refused Paws Up's unconditional offer of reinstatement.  Kibbee does not point to any evidence of record suggesting that Paws Up extended anything other than a good faith offer to reinstate her to her prior position as the resort's human resources manager.  Paws Up went so far as to assure Kibbee in its reinstatement offer that her prior supervisor, John Erickson, was no longer "at the company" and she would be working under a different supervisor, with whom she confirmed she "had a good working relationship."  Pl.'s Resp. to Def.'s Mot. to Dismiss, Ex. C.  *See Bragalone*, 866 F.Supp. at 1297 (granting employers' motion to toll back pay claims where plaintiff failed to present evidence of any serious harassment and employer assured her she would not have to deal with the same supervisor upon her return); *Morris*, 952 F.2d at 203 (concluding plaintiff who endured ongoing sexual harassment unreasonably rejected unconditional reinstatement offer where the employer assured her she would be protected from future harassment); *Holmes v. Marriott Corp.*, 831 F.Supp 691, 712 (S.D. Iowa 1993).

PAGE 16

Presumably because they typically arise in the context of employment discrimination claims under federal and state law, cases involving genuine issues of triable fact regarding the reasonableness of a plaintiff's decision to reject a reinstatement offer uniformly involve circumstances far more egregious than those alleged here.  *See e.g. Ortiz*, 852 F.2d at 387 (upholding jury's determination that it was reasonable for plaintiff to refuse unconditional reinstatement offer where, in addition to the plaintiff's testimony, "there was evidence from a mental health practitioner and doctors that [the plaintiff] could not work at all or, as one said, should never work at any branch of the [employer] again."); *Lewis v. Federal Prison Indus.*, 953 F.2d 1277, 1280 (11th Cir. 1992) (concluding reinstatement offer did not preclude front pay award where the uncontradicted medical and other evidence of record showed that the plaintiff "could not return to his former work environment without suffering a return of the symptoms that so debilitated him the first place"); *Pyramid Printing Company v. Alaska State Commission for Human Rights*, 153 P.3d 994, 999 (Alaska 2007) (citing string of federal cases and concluding that "where a constructively discharged employee reasonably believes that the intolerable conditions have not changed, the duty to mitigate does not require that the employee accept a reinstatement offer.").

PAGE 17

In Montana, constructive discharge is statutorily defined as "the voluntary termination of employment by an employee because of a situation created by an act or omission of the employer which an objective, reasonable person would find so intolerable that voluntary termination in the only reasonable alternative." M.C.A. § 39-2-903(1).  Kibbee fails to point to sufficient evidence from which a trier of fact could find that the circumstances of her employment at Paws Up were so intolerable that voluntary termination was the only reasonable alternative.

Kibbee does not claim that she was harassed or discriminated against, and does not dispute that her former supervisor, John Erickson, had left the company by the time she received the reinstatement offer.  Nor does Kibbee dispute that she had a good working relationship with the person whom Paws Up indicated would be her new supervisor upon her return.  Kibbee claims that she spent her last weeks on the job worrying about when she was going to be fired, but does not point to any evidence that her situation was so stressful as to require any medical attention or treatment.  As evidenced by the fact that Kibbee rejected Paws Up unconditional offer of reinstatement, Kibbee apparently did not want to return to her prior position without some additional compensation.  While she may have feared that Paws Up would discharge her at some point in the future, her subjective belief in that regard is not enough to raise a genuine issue of material

fact as to whether her rejection of Paws Up's reinstatement offer was objectively reasonable.

In sum, the uncontroverted evidence of record establishes that Paws Up unconditionally offered to reinstate Kibbee to her former position as the resort's human resources manager, and Kibbee has not pointed to sufficient evidence from which a trier of fact could find that it was objectively reasonable for her to reject that offer.  Under the rule enunciated in *Ford Motor*, Paws Up's liability for back pay damages ceased to accrue at that time.  Because Paws Up offered to reinstate Kibbee to her former job at the same salary and benefits retroactive to the date of her discharge, Kibbee has no compensable damages under the WDEA, which limits damages to lost wages and fringe benefits for a period not to exceed four years from the date of discharge, together with interest.  Mont. Code Ann. § 39-2-905(1).  Based on the foregoing, Paw's Up motion to summarily dismiss Kibbee's wrongful discharge claim under the WDEA should be granted.

## B.   Misrepresentation and Breach of the Covenant of Good Faith and Fair Dealing

Paws Up also moves for summary judgment as to Kibbee's remaining common law claims for misrepresentation and violation of the covenant of good faith and fair dealing.  Beginning with the well-established premise that Montana's WDEA provides the exclusive remedy for a wrongful discharge, Paws UP maintains that

Kibbee's common law claims are statutorily preempted because they are inextricably intertwined with her alleged discharge.

Kibbee does not dispute that the WDEA "provides the exclusive remedy for a wrongful discharge from employment,"[6] and expressly preempts common law claims.  Mont. Code Ann. § 39-2-913 ("Except as provided in this part, no claim for discharge may arise from tort or express or implied contract.").  While the WDEA thus "bars claims for discharge arising from tort or implied or express contract," it "does not bar all tort or contract claims merely because they arise in the employment context." *Beasley v. Semitool*, 853 P.2d 84, 86 (Mont. 1993).  The WDEA effectively preempts any claims that are "inextricably intertwined with and based on" allegedly wrongful discharge. *Kulm v. Mont. St. Univ.-Bozeman* 948 P.2d 243, 246 (Mont. 1997).

In her Amended Complaint, Kibbee alleges that Paws Up violated the covenant of good faith and fair dealing because it "deliberately enticed her to stay and precluded her from promising employment opportunities elsewhere," when it planned all along to discharge her.  Am. Compl. ¶ 70.  Kibbee also asserts that John Erickson, who was general manager at the time, falsely represented to her "that he had arranged jobs for her in Colorado and Washington," for the purpose of inducing her "to resign her position at Paws Up."  Am. Compl. § 71.  Finally,

---

[6] Mont. Code Ann. § 39-2-902.

Kibbee claims that Erickson "concealed the fact that he did not have a list of reasons that would establish good cause for [her] discharge for the purpose of inducing [her] to resign her position at Paws Up."  Am. Compl. ¶ 72.  Kibbee also asserts a misrepresentation claim, in which she alleges Paws Up falsely "represented that it was going to continue [her] employment," for purposes of inducing her to stay, and she relied on that representation to her detriment.  Am. Compl. ¶ 75.

Kibbee argues these claims are distinct from her wrongful discharge claim because they are not "contingent upon [her] termination" and "could have been brought regardless of whether [she] were still employed" at Paws Up.  *Beasley*, 853 P.2d at 84.  Kibbee is mistaken.  Kibbee's claims for misrepresentation and breach of the covenant of good faith and fair dealing both arise out of the promise of continued employment she claims Paws Up made and then broke.  The Court fails to see how Kibbee could pursue a claim that Paws Up broke a promise of continued employment had that employment not ended.  All of the allegations set forth in Kibbee's claims for misrepresentation and breach of the covenant of good faith and fair dealing are inextricably intertwined with her alleged wrongful discharge.  Because those claims do not arise separately from the discharge, they are preempted by Montana's WDEA.

**C.   Punitive Damages**

PAGE 21

Finally, Paws Up moves for summary judgment on Kibbee's claim for punitive damages, in which she alleges that the resort acted with "actual fraud and actual malice" when it discharged her from her employment.  Am. Compl. ¶¶ 76-80.  Because Paws Up is entitled to summary judgment as to all of Kibbee's remaining claims for the reasons set forth above, Kibee's claim for punitive damages is moot and Paws Up is entitled to summary judgment.

PAGE 22